Case No. 2:2009-CV-00579-MHT

# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF ALABAMA

---

## ROBERT L. WASHINGTON, III AND GLORIA JEAN WASHINGTON
**Appellant,**

**v.**

## CURTIS C. REDING, CHAPTER 13 TRUSTEE

**Appellees**

---

Appeal from the United States Bankruptcy Court
for the Middle District of Alabama

**BRIEF OF APPELLANTS**
Robert L. Washington, III and Gloria Jean Washington

Richard D. Shinbaum (SHI007)
Attorney for Appellants
Robert L. Washington, III and
Gloria Jean Washington
Post Office Box 201
Montgomery, AL 36101-0201
Telephone: 334-269-4440
Facsimile: 334-263-4096
rshinbaum@smclegal.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

**Conflict Disclosure Statement**

Comes now Robert L. Washington, III and Gloria Jean Washington, appellants in the above-captioned matter, and in accordance with the order of this Court, making the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities reportable under the provisions of the Middle District of Alabama's General Order No. 3047:

This party is an individual. There are no entities.

**Certificate of Interested Persons**

Pursuant to Middle District of Alabama's General Order Civil Misc. No 00-3047 paragraph (2), the appellants certify that the following parties may have an interest in the outcome of this case:

1. Robert L. Washington, III and Gloria Jean Washington - Debtors/Appellants

2. Richard D. Shinbaum - Counsel for the Debtors/Appellants

3. Curtis C. Reding -  Standing Chapter 13 Trustee/Appellee

4. Sabrina L. McKinney -  Counsel for the Trustee/Appellee

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

**FEDERAL STATUTES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

**STATE STATUTES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**FEDERAL RULES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**FEDERAL CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**STATE CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**OTHER AUTHORITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . viii

STATEMENT OF THE ISSUE ON APPEAL

**I.      Whether the debtors' unemployment compensation is a benefit under the Social Security Act and should be excluded from the debtors' disposable income calculations.**

**II.    Whether the debtors' plan meets the disposable income test within the mandates of 11 U.S.C. §1325 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA").** . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Course of Proceedings and Disposition in the Court Below . . . . . . . . . . . 5

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

APPELLANT'S CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    Requirements for Confirmation of a Chapter 13 Plan . . . . . . . . . . . . 9

    II.    Relationship of the Social Security Act to the Alabama Unemployment Compensation Act. . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.    Unemployment Benefits Are Not Income for Purposes of CMI . . . 16

IV.    Conclusion ........................................... 21

CERTIFICATE OF SERVICE ..................................... 23

CERTIFICATION ............................................. 24

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

11 U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

11 U.S.C. §1302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. §1322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. §1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix, 9, 11, 21

11 U.S.C. §362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. §522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. §541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. §704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. §707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 17

26 U.S.C. §3301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. §158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

42 U.S.C. § 903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. §301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. §501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. §664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. §666(a)(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. §666(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. §666(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C.. §1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE STATUTES**
Code of Alabama, 1975 §25-4-118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Code of Alabama, 1975 §25-4-30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL RULES**
Fed. R. Bankr .P. Rule 8002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Fed. R. Bankr. P. 8013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

USCS Bankruptcy F 22A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**FEDERAL CASES**
Anes v. Dehart (*In re* Anes), 195 F.3d 177 (3rd Cir. 1999) . . . . . . . . . . . . . . . . 21

California Dep't of Human Resources Development v. Java, 402 U.S. 121, 130-131 (U.S. 1971)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Carmichael, et al v. Southern Coal & Coke Co.301 U.S. 495, 57 S. Ct. 868 (1937)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

Chas. C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Connecticut Nat'l Bank of Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Harshbarger v. Pees (*In re* Harshbarger), 66 F.3d 775 (6th Cir. 1995) . . . . . . . . 21

In Re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . 19

In re Club Assocs., 951 F.2d at 1228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

In Re Munger, 370 B.R. 21 (Bankr. D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . 18

In re Norris, 239 B.R. 247, 249 (M.D. Ala. 1999) . . . . . . . . . . . . . . . . . . . . . . . viii

In re Salter, 2007 WL 1076686 (Bankr. M.D. Ala. April 4, 2007) . . . . . . . . . . . 20

In Re Sorrell, 359 B.R. 167, (Bankr. S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . 16, 17

**STATE CASES**

Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516 (1937) . . . . . . . 12

Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So. 2d 496, 1948
Ala . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Holmes  v. Cook, 45 Ala. App.688; 236 So. 2d 352 (1970) . . . . . . . . . . . . . . . . 15

Metcalf v. Department of Indus. Relations, 245 Ala. 299, 16 So. 2d 787 (1944)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**OTHER AUTHORITY**

Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 247
(Spring 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Marianne Culhane & Michaela White, *Catching Can-Pay Debtors -- Is the Means
Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665, 674 (Winter 2005) . . . . . 19

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This appeal is being brought pursuant to 28 USCS §158 which gives district courts jurisdiction to hear appeals from judgments, orders, and decrees of bankruptcy courts.  The Bankruptcy Court's Order sustaining the Chapter 13 Trustee/Appellee's objection to confirmation of the debtors' plan disposed of all issues pending with regard to the confirmation of the debtors; plan and is a final decision within the contemplation of §158.

The district court's review of a bankruptcy court's legal conclusions, is *de novo*, In re Club Assocs., 951 F.2d at 1228; the court must "independently examine the law and draw its own conclusions after applying the law to the facts," In re Norris, 239 B.R. 247, 249 (M.D. Ala. 1999).

District courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

The appeal is timely filed in that the order of the Bankruptcy Court was entered May, 21st, 2009 and pursuant to Fed. R. Bankr .P. Rule 8002 (a) this appeal was filed on June 1st , 2009.

viii

## STATEMENT OF THE ISSUE ON APPEAL

**I.    Whether the debtors' unemployment compensation is a benefit under the Social Security Act and should be excluded from the debtors' disposable income calculations.**

**II.   Whether the debtors' plan meets the disposable income test within the mandates of 11 U.S.C. §1325 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA").**

## STATEMENT OF THE CASE

**Nature of the Case**

This is an appeal of an order sustaining the Appellee/Trustee's Objection to Confirmation of the Appellant/Debtors Chapter 13 Plan issued by the United States Bankruptcy Court for the Middle District of Alabama.

**Course of Proceedings and Disposition in the Court Below**

The Debtors/Appellants, Robert L. Washington, III and Gloria Jean Washington, filed for relief under Chapter 13, Title 11 on January 5th, 2009 (R-1) with the United States Bankruptcy Court for the Middle District of Alabama. The Debtors Chapter 13 plan was filed on the same day. (R-2).

The Trustee/Appellee filed an objection to the confirmation of the debtors Chapter 13 plan on March 12th, 2009 (R-4). A confirmation hearing was held on March 23rd and continued to March 30th. Following the hearings and submission of briefs to the Court for review, the United States Bankruptcy Court for the Middle District of Alabama issued an Order Sustaining the Trustee/Appellee's Objection, Denying Confirmation of the Chapter 13 Plan and a Conditional Order Dismissing Bankruptcy Case on May 21, 2009. (R-10). On June 1st, 2009, the Debtors/Appellants filed a notice of appeal from the bankruptcy court's order sustaining their objection and denying confirmation. (R-11).

5

## STATEMENT OF THE FACTS

The following facts have previously been stipulated and are not in dispute:

1.    Debtor filed for relief pursuant to Chapter 13 on January 5, 2009 (R-1). The provisions of BAPCPA apply.

2.    The debtors have proposed a chapter 13 plan which provides that nothing (0%) be paid to their unsecured creditors (R-2).

3.    The debtors list $953.33 per month in income on schedule I (R-1) from unemployment compensation. The debtor receives this unemployment compensation as a result of his prior employment with Aerotek.

4.    On the debtors' Form B22C, line 8, the debtor lists $146.67 on the left hand side of B22C as the six month average of the unemployment compensation income. However, the debtors did not list the $146.67 on the corresponding right hand side of B22C as income for the disposable income calculations.

5.    These debtors are above median income debtors within the meaning of BAPCPA.

6.    After applying the means test to the income listed by the debtors on their B22C  form, they have negative disposable income of -$53.05.  If this negative -$53.05 figure is correct, then this debtors' chapter 13 plan proposing to pay 0% to unsecured creditors is due to be confirmed as it would comply with the disposable

6

income test.  If the $146.67 in unemployment compensation were included in the debtors' disposable income calculations, this would result if positive income of $93.62 on line 59 of B22C.  $93.62 in disposable income would result in a POT of $5,617.20 for the benefit of the debtors' unsecured creditors and the debtors' plan would not be confirmed as it would fail the disposable income test.

## SUMMARY OF ARGUMENT

The United States Bankruptcy Court for the Middle District of Alabama erred when it sustained the Trustee/Appellee's Objection to Confirmation and Denied Confirmation of the Debtor's Chapter 13 Plan based upon a finding that unemployment compensation is not a benefit received under the Social Security Act as that phrase is used in 11 U.S.C. §101(10A)(B).

## APPELLANT'S CONTENTIONS

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA") made substantial changes to Title 11 of the United States Code, the basis of the substantive law of bankruptcy.  This appeal seeks to interpret the effect of recent changes to 11 U.S.C. §707 and §101(10A).

## I.    Requirements for Confirmation of a Chapter 13 Plan

Under BAPCPA, 11 U.S.C §707 sets forth a complex formula for determining whether a chapter 7 case is presumed to be an abuse and also sets forth certain other criteria to be considered when such a presumption does not arise.  The formula, or "means test" is important in Chapter 13, as well, because it is the starting point in determining the debtor's disposable income and what the debtor is required to pay to unsecured creditors in a Chapter 13 plan.

Pursuant to §1325 a Chapter 13 plan cannot be confirmed if it does not devote the debtor's entire disposable income to the Chapter 13 plan.  Section 1325(b)(2) states in relevant part:

> "the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-

9

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor…"

The first step in the calculation is to determine a debtor's "current monthly income".   Current monthly income is defined in 11 U.S.C. §101(10A) which states which states (in relevant part):

### 101.10A Current Monthly Income; § 101(10A)

The term "current monthly income"--

(A)   means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

(i)   the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii)   the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B)   includes any amount paid by an entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), ***but excludes benefits received under the Social Security Act***, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism

10

(as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism. (Emphasis added).

This definition is a critical component of the means test added to section §707(b)2 and of the disposable income test under §1325(b)3. A fundamental question which must be answered is whether unemployment benefits are "benefits received under the Social Security Act" and if the benefits are properly excluded from the statutory definition of current monthly income.

## II.    Relationship of the Social Security Act to the Alabama Unemployment Compensation Act.

President Franklin D. Roosevelt paved the way for the Social Security Act in 1935.

> "The Social Security Act received its impetus from the Report of the Committee on Economic Security, which was established by executive order of President Franklin D. Roosevelt to study the whole problem of financial insecurity due to unemployment, old age, disability, and health. In its report, transmitted to Congress by the President on January 17, 1935, the Committee recommended a program of unemployment insurance compensation [*131] as a "first line of defense for . . . [a worker] ordinarily steadily employed . . . for a limited period during which there is expectation that he will soon be reemployed. This should be a contractual right not dependent on any means test. . . . It will carry workers over most, if not all, periods of unemployment in normal times without resort to any other form of assistance." California Dep't of Human Resources Development v. Java, 402 U.S. 121, 130-131 (U.S. 1971)

11

The United States Congress enacted the Social Security Act on August 14, 1935, 42 U.S.C.A. §301 et seq.  The Social Security Act also established a federal program designed to assist states in administering their programs. 42 U.S.C. §501, et seq., and on September 14, 1935, Alabama became the first state to enact an unemployment compensation law.[1]  The states whose unemployment-compensation programs satisfy certain requirements qualify for federal funds to administer their programs. The federal statutes relating to funding are set out in the Social Security Act and the Federal Unemployment Tax Act, 26 U.S.C. §3301 et seq. (the "FUTA"). Under FUTA, a combination of federal and state taxes is levied upon employers. Although they are imposed as "taxes," the amounts paid are, in reality, akin to "premiums" that are paid for unemployment insurance coverage. Proceeds from the taxes are deposited in the U.S. Treasury's Federal Unemployment Trust Fund (the Fund) and each state has a separate account in the Fund.

> "The Secretary of the Treasury is authorized and directed to receive and hold in the Fund all monies deposited therein by a State agency from a State unemployment fund . . ." 42 U.S.C. § 1104; "The Secretary of the Treasury is authorized and directed to pay out of the

---

[1]

The Alabama Supreme Court case of Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516 (1937), held the Alabama law constitutional even before the constitutionality of the Federal Social Security Act was determined. It was from cases begun in Alabama that the Supreme Court of the United States first held the Federal Social Security Act constitutional in May of 1937.  Chas. C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.

Fund to any state [**13] agency such amount as it may duly requisition . . ." 42 U.S.C. § 1104(f)."

The funds are generally invested by the Secretary of the Treasury in government securities similar to those for social security trust funds. The use of these funds for any purpose other than payment of unemployment benefits is strictly prohibited. Each individual state administers their own program with federal funds. 42 U.S.C. § 903, et seq.

In Alabama, unemployment is paid pursuant to Code of Alabama, 1975 §25-4-30, et.seq., which includes and is derived from funds paid pursuant to the Social Security Act.

§25-4-30. Generally.
There shall be as a special fund, separate and apart from all public moneys or funds of this state, an unemployment compensation trust fund, which shall be administered by the director exclusively for the purposes of this chapter without liability on the part of the state beyond the amounts paid into and earned by the fund. This fund shall consist of:

(1) All contributions paid in or collected under this chapter;

(2) Interest earned upon any moneys in the fund;

(3) Any property or securities acquired through the use of moneys belonging to the fund;

(4) All earnings of such property or securities;

13

**(5) Any money received from the federal unemployment account in the unemployment trust fund in accordance with Title XII of the Social Security Act [42 U.S.C.S. § 1321 et seq.];**

**(6) All money credited to this state's account in the unemployment trust fund pursuant to §903 of the Social Security Act [42 U.S.C.S. § 1103], as amended; and**

(7) All money received for the fund from any other source.

In addition, state law requires the director of the fund to "comply with the regulations prescribed by the U.S. Secretary of Labor, and his successors, governing the expenditures of such sums as may be allotted and paid to this state under Title III of the Social Security Act [42 U.S.C.S. § 501 et seq.], for the purpose of assisting in the administration of this chapter." Code of Ala. §25-4-118. Finally, it can hardly be argued that payments received from a state administered program funded in part by the Social Security Act are not "benefits" to the debtor receiving the payments.

Despite these Alabama statutes which demonstrate that the Alabama Unemployment Compensation Fund is both funded by the Social Security Administration and regulated by the federal government, the Bankruptcy Court ruled that unemployment benefits are not benefits under the Social Security Act. This is an incorrect interpretation of the statues which support the debtors' contention that

14

the federal statutes and state statutes are intertwined and cannot be exclusively separated.

Consider the original intent of the unemployment act. Originally, the purpose of the unemployment compensation law was to provide funds to avoid a period of destitution for involuntarily unemployed workers during their unemployment and to ameliorate the tragic consequences of unemployment brought about by the failure of industry to furnish sufficient jobs.   Metcalf v. Department of Indus. Relations, 245 Ala. 299, 16 So. 2d 787 (1944), Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So. 2d 496, 1948 Ala.

The Alabama Court of Civil Appeals further explained that both the state and federal government had the same goal.

> "The Social Security Act and its implementation by state unemployment compensation laws was enacted in the midst of a deep depression when the evil results of unemployment were only too evident. The Congress and most state legislatures were determined that the tragic and economic socials effect of sudden and prolonged periods of unemployment would be remedied so far as possible." Holmes v. Cook, 45 Ala. App.688; 236 So. 2d 352 (1970)

The complex and unique provisions of The Social Security Act and the Alabama Unemployment Compensation Act work in concert. Benefits derived under the Alabama Unemployment Compensation Act are derived under the Social Security Act in that the enactment of the federal act made such a state law possible and feasible. In addition, because the Fund is contributed to by the states and distributed

by the Federal Government to the states, it would be hard to argue that unemployment benefits are not benefits derived under the Social Security Act. The federal government regulates and funds all state unemployment programs and to deny the dependence of the Alabama Act or other state unemployment legislation upon the federal statutes is irrational. Furthermore, in deciding the constitutionality of the Alabama Unemployment Act the U.S. Supreme Court has found the following:

> "The United States and the State of Alabama are not alien governments. They coexist within the same territory. Unemployment within it is their common concern. Together the two statues now before us embody a cooperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other. The Constitution does no prohibit such cooperation."
> Carmichael, et al v. Southern Coal & Coke Co.301 U.S. 495, 57 S. Ct. 868 (1937)

The Bankruptcy Court erred in not considering the Supreme Court's holding in Carmichael, et al and other case law that supports the Debtors' contention that unemployment benefits are benefits received under the Social Security Act.


III.    **Unemployment Benefits Are Not Income for Purposes of CMI**

The first bankruptcy case to address the question of whether unemployment benefits are benefits derived under the Social Security Act and therefor excluded from Current Monthly Income was In Re Sorrell, 359 B.R. 167, (Bankr. S.D. Ohio 2007).

16

One of the issues presented was whether the debtor's Chapter 7 case presented abuse under §707(b)(2)(A)(I) based upon the debtor not including unemployment income in the CMI calculation.

The court pointed out that initial court decisions struggled with the lack of clarity and coherence in significant portions of the 2005 Act which required an analysis applying the canons of statutory construction, however, statutory construction is a tool only to be used if the plain meaning of the statute is ambiguous or cannot be determined.  In Re Sorrell  recalled that "the courts must presume that a legislature says in a statue what it means and means in a statue what it says there" quoting Connecticut Nat'l Bank of Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).  The Sorrell Court examined other areas of the 2005 Act which contained specific references to the Social Security Act including §362(b)(2), which references §§466(a)(16) [42 USCS § 666(a)(16)] , 466(a)(7) [42 USCS § 666(a)(7)], §464 and 466(a)(3) [42 USCS §§ 664 and 666(a)(3)] of the Social Security Act.  In addition, the Court went on to note that references to specific provision of the Social Security Act can also be found in 11 U.S.C. §704(c)(1)(A)(I) and 11 U.S.C §1302(d)(1)(A)(i), namely sections 464 and 466 of the Act.  The Court observed:

> "In all of these examples, Congress did not choose the broad term the
> "Social Security Act," which is the language chosen in connection with

17

CMI; but, rather, selected specific provisions of the Social Security Act. The CMI definition does not contain any congressionally limited specific provisions of the Social Security Act. It is appropriate to conclude that when Congress wished to limit the applicability of the Social Security Act, it did so by reference to specific sections. Canons of statutory construction approved by the Supreme Court recognize that congressional enactments which contain particular language in one section of a statute, but omit such particularity in another section, reflect Congress's intention and purpose in such disparate use. BFP v. Resolution Trust Corp, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L. Ed. 2d 556 (1994), citing City of Chicago v. EDF, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L. Ed. 2d 302 (1994). [**42]  See also Keene Corp. v. United States, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993).

A comparison of the specificity which Congress chose in referring to limited, specific provisions of the Social Security Act in §§ 362(b)(2)(D), (E), (F) and (G), 704(c)(1)(A)(i) and 1302(d)(1)(A)(i) as opposed to Congress's choice in referring to the unlimited, general provisions of the entire Social Security Act in § 101(10A)(B) provides further support for the conclusion that unemployment compensation is one of the "benefits received under the Social Security Act."

In re Sorrell, 359 B.R. 167, 183 (Bankr. S.D. Ohio 2007)

Subsequently In Re Munger, 370 B.R. 21 (Bankr. D. Mass. 2007), faced the same issue and relied upon the Sorrell decision as well as various commentators' support for its interpretation persuasive. Holding that unemployment benefits were benefits derived under the Social Security Act, the Munger Court noted that the issue of unemployment compensation has been debated among bankruptcy commentators since the drafting of the Means Test Form in 2005.  Although some commentators have disagreed with the exclusion of unemployment income from the calculation of

current monthly income[2] and at least one court has relied upon these interpretations,[3] the Munger court found the commentators supporting the decision in In Re Sorrell to be more persuasive:

> "On the other hand, several bankruptcy commentators support the statutory interpretation set forth in Sorrell. *Collier on Bankruptcy*, in its analysis of § 101(10A), states, "[u]nemployment benefits are provided for in Titles III, XII, XIII and XV [of the Social Security Act] . . . While many of these programs primarily benefit lower income families not affected by the means test, a debtor may receive benefits from such a program that would otherwise be counted in current monthly income . . ." suggesting that unemployment compensation should be excluded from the calculation of CMI under the Means Test. *Collier on Bankruptcy* 101-81 (Alan N. Resnick & Henry J. Sommer eds., 2007)."

The Court went on to state that statutory construction of the Bankruptcy Code supported the contention that the phrase is intentionally broad.

> "Sections of the Bankruptcy Code distinguish "unemployment compensation" from "a social security benefit." See, e.g., 11 U.S.C. § 522(d)(10)(A) ("The following property may be exempted under subsection (b)(2) of this section: (10) the debtor's right to receive -- (A) a social security benefit, unemployment compensation, or a local public

---

[2]

Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 247 (Spring 2005); See also Marianne Culhane & Michaela White, *Catching Can-Pay Debtors -- Is the Means Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665, 674 (Winter 2005) (suggesting that the presumed purpose for exclusion of benefits received under the Social Security Act was specifically "to protect retirement benefits at the expense of creditors").

[3]

Only one court has ruled that unemployment benefits should be included in calculation of current monthly income based upon Judge Wedoff's article. In Re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008)

assistance benefit . . ."). The way in [**14] [*26] which Congress chose to phrase the references in the sections supports the view that "a benefit received under the Social Security Act" in § 101(10A)(B) was purposefully intended to be broader than "a social security benefit." "Unemployment compensation" is included in this broader definition." <u>In re Munger</u>, 370 B.R. 21, 26 (Bankr. D. Mass. 2007)

The Trustee points to the new form B22C which allows the debtor to "decide" if his or her unemployment compensation is included in the calculation of CMI. The 2005 Committee Notes to Form B22 explain this treatment as follows:

> "Because the federal government provides funding for state unemployment compensation under the Social Security Act, there may be a dispute about whether unemployment compensation is a "benefit received under the Social Security Act." The forms take no position on the merits of this argument, but give debtors the option of reporting unemployment compensation separately from the CMI calculation. The separate reporting allows parties in interest to determine the materiality of an exclusion of unemployment compensation and to challenge it." USCS Bankruptcy F 22A

The Trustee further points out that prior to enactment of BAPCPA, social security benefits were included in the disposable income calculation (<u>In re Salter</u>, 2007 WL 1076686 (Bankr. M.D. Ala. April 4, 2007). However, with the implementation of BAPCPA, the exclusions from current monthly income were narrowly drawn.

Significantly, rather than rely on the debtor's actual income, Congress explicitly excluded certain types of income from the definition. In addition to

specifically excluding benefits received pursuant to the Social Security Act, in calculating "disposable income" for purposes of chapter 13, Congress has also excluded certain child support, foster care, and disability payments, contributions to pension and deferred compensation plans, and funds used to repay pension loans.[1] See 11 U.S.C. §§ 1322(f), 1325(b). Such choices regarding what income should be considered in determining the debtor's ability to pay are consistent with other amendments that protect retirement benefits and child support payments at the expense of creditors. See, e.g., 11 U.S.C. §§ 522(b)(3)(c), 522(d)(12), 541(b)(7), 1325(a)(8).

That Congress has decided to apply a consistent formula to all debtors and protect certain types of income from the reach of creditors makes the disposable income test different than it was prior to the 2005 amendments, but not unfair. The new test merely represents Congress's best efforts to balance the competing interests of debtors and creditors in today's credit-oriented society.

## IV.    Conclusion

---

[1] Congress's determination that funds used for repayments of pension loans should not be considered disposable income reversed the holdings of many courts. *See, e.g.*, Anes v. Dehart (*In re* Anes), 195 F.3d 177 (3rd Cir. 1999); Harshbarger v. Pees (*In re* Harshbarger), 66 F.3d 775 (6th Cir. 1995).

Wherefore, premises considered, the Debtors contend that the Bankruptcy Court erred in not following the holdings in the cases of <u>Sorrell</u> and <u>Munger</u> and furthermore erred in not considering state statutes and the rulings in <u>Carmichael, et al</u>  in ruling unemployment compensation is not a benefit under the Social Security Act and sustaining the Chapter 13 Trustee's objection to confirmation of the debtors' plan.  The debtors contend that unemployment benefits are benefits under the Social Security Act and as such is properly excluded from the calculation of current monthly income and that the Chapter 13 Trustee's objection should have been overruled.

Respectfully submitted this the July 23, 2009

/s/Richard D. Shinbaum
Richard D. Shinbaum (SHI007)
Attorney for Appellants
Robert L. Washington, III and Gloria
Jean Washington
Post Office Box 201
Montgomery, AL 36101-0201
Telephone: 334-269-4440
Facsimile: 334-263-4096
rshinbaum@smclegal.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was furnished via either

electronic mail or United States Mail, properly addressed and postage prepaid to the

following on this day: July 23, 2009.

Hon. Curtis C. Reding
Chapter 13 Trustee
P.O. Box 173
Montgomery, AL 36101-0173

Sabrina L. McKinney
Staff Attorney for the Chapter 13 Trustee
P.O. Box 173
Montgomery, AL 36101-0173

/s/Richard D. Shinbaum
Richard D. Shinbaum (SHI007)

Attorney for Appellants
Robert L. Washington, III and Gloria
Jean Washington
Post Office Box 201
Montgomery, AL 36101-0201
Telephone: 334-269-4440
Facsimile: 334-263-4096
rshinbaum@smclegal.com

## CERTIFICATION OF COMPLIANCE

The Appellant hereby certifies that the foregoing principal brief does not exceed 30 pages, contains no more than 14,000 words and is typed in 14 point Times New Roman type.