UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>ROBERT L. WASHINGTON, III and<br>GLORIA JEAN WASHINGTON,<br>     Debtors. | District Court Appellate Case No.<br>2:09-cv-00579-MHT |
| ROBERT L. WASHINGTON, III and<br>GLORIA JEAN WASHINGTON,<br>     Appellants,<br><br>v.<br><br>CURTIS C. REDING, JR., STANDING<br>CHAPTER 13 TRUSTEE FOR THE<br>MIDDLE DISTRICT OF ALABAMA,<br>     Appellee. | Bankruptcy Court Chapter 13 Case No.<br>09-30014-DHW-13 |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**APPELLEE'S BRIEF ON APPEAL**

Counsel for the Appellee:

Sabrina L. McKinney (MCK041)
ASB-3162-I71S
Staff Attorney for Chapter 13 Trustee
Curtis C. Reding, Jr.
Office of the Chapter 13 Trustee
P.O. Box 173
Montgomery, AL  36101-0173
Telephone:  (334) 262-8371
Facsimile:  (334) 834-7635
Email: mckinneys@ch13mdal.com

# TABLE OF CONTENTS

CONFLICT DISCLOSURE STATEMENT,
    CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT............................................................ iii

CERTIFICATE OF TYPE SIZE AND STYLE .................................................... iv

TABLE OF CASES AND OTHER AUTHORITY ................................................... v

STATEMENT REGARDING APPELLATE JURISDICTION............................................ 1

STATEMENT OF THE ISSUE ON APPEAL..................................................... 2

       Issue on Appeal

       Relief Sought by the Appellee

STANDARD OF APPELLATE REVIEW............................................................ 3

STATEMENT OF THE CASE......................................................................... 4

       Nature of the Case

       Course of the Proceedings and Disposition in the Court Below

STATEMENT OF THE FACTS ........................................................................ 6

SUMMARY OF THE ARGUMENT ................................................................... 8

ARGUMENT ................................................................................................. 9

CONCLUSION.............................................................................................. 19

CERTIFICATE OF COMPLIANCE................................................................. 20

CERTIFICATE OF SERVICE ........................................................................ 21

**CONFLICT DISCLOSURE STATEMENT**
**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Your Appellee, by and through the undersigned counsel in accordance with the Order of this court, makes the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees, affiliates, or similar entities reportable under the provisions of the Middle District of Alabama's General Order No. 3047:

The Appellee is an individual and the relationship to the parties is hereby reported:

The Appellee is the Standing Chapter 13 Trustee for the Middle District of Alabama and as such is currently administering the chapter 13 estate of the Appellants, Robert L. Washington, III and Gloria Jean Washington.

The Appellee, pursuant to 11th Cir. R. 26.1-1 and Middle District General Order No. 3047 further hereby certifies that the following persons and entities have or may have an interest in the outcome of this case:

1.    Robert L. Washington, III and Gloria Jean Washington - Debtors/Appellants

2.    Curtis C. Reding, Jr., Standing Chapter 13 Trustee, Appellee

3.    Richard D. Shinbaum and Vonda McLeod – Counsel for Debtors/Appellants

4.    Sabrina L. McKinney – Staff Attorney for Trustee/Appellee

5.    The Honorable Dwight H. Williams, Jr. – United States Bankruptcy Judge,
       Middle District of Alabama

Curtis C. Reding, Jr.
Standing Chapter 13 Trustee

By:   /s/ Sabrina L. McKinney
       Sabrina L. McKinney (MCK041)
       ASB-3162-I71S
       Staff Attorney for Chapter 13 Trustee

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellee does not request oral argument in this action unless the court feels that oral argument may benefit the court in its decision.

## CERTIFICATE OF TYPE SIZE AND STYLE

The Appellee's brief on appeal is typed in 12 point Times New Roman and is not proportionally spaced.

## TABLE OF CASES AND OTHER AUTHORITY

**Cases**

*In re Armstrong*, 320 B.R. 523 (D. Delaware 2005)..............................................3

*In re Arsenault,* 2007 WL 1956277 (Bankr. M.D. Fla. 2007) .............................12

*In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008) ...................................14, 15, 16, 17, 18

*In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007)..................................16

*In re Club Associates,* 951 F.2d 1223 (11th Cir.1992) ..........................................3

*In re Compton*, 88 B.R. 166 (Bankr. S.D. Ohio 1988) ........................................13

*In re Gulfstar Industries, Inc.*, 236 B.R. 75 (M.D. Fla. 1999)...............................3

*In re Hickman*, 104 B.R. 374 (Bankr. D. Colo. 1989) .........................................13

*In re Kibbe*, 361 B.R. 302 (1st Cir. BAP 2007)....................................................12

*In re Mewborn*, 367 B.R. 529 (Bankr. D.N.J. 2006) ...........................................16

*In re Munger*, 370 B.R. 21 (Bankr. Mass 2007)...........................................16, 17

*In re Overstreet*, 23 B.R. 712 (Bankr. W.D. La. 1982) .......................................13

*In re Petro*, 395 B.R. 369 (6th Cir. BAP 2008)...................................................12

*In re Salter*, 2007 WL 1076686 (Bankr. M.D. Ala. 2007) ..................................14

*In re Seymore*, 2008 WL 1809309 (D.N.J. 2008).................................................16

*In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007).........................................16

*In re Sublett,* 895 F.2d 1381 (11th Cir.1990).........................................................3

*In re Warren*, 2007 WL 2683837 (Bankr. M.D. Ala. 2007)................................12

*In re Warren*, 2007 WL 2916563 (Bankr. D. Mont. 2007) .................................15

**Statutes and Miscellaneous**

11 U.S.C. §101(10A) ........................................................................... 10, 11, 15, 17

11 U.S.C. §707 ................................................................................................. 6, 9, 11

11 U.S.C. §1322 ......................................................................................................... 9

11 U.S.C. §1325 ............................................... 2, 4, 6, 7, 8, 9, 10, 11, 18, 19

11th Cir. R. 26.1-1 ................................................................................................... ii

26 U.S.C. §85 .......................................................................................................... 15

26 U.S.C. §86 .......................................................................................................... 15

26 U.S.C. §138 ........................................................................................................ 15

26 U.S.C. §139A ..................................................................................................... 15

28 U.S.C. §157 .......................................................................................................... 3

28 U.S.C. §158 ...................................................................................................... 1, 3

42 U.S.C. §501 ........................................................................................................ 14

*Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ............ 6, 9, 13, 15, 17

*Collier on Bankruptcy* ¶101.10A (15th ed. Rev. 2007) ........................................ 17

F.R.BANKR.P. 7052 .................................................................................................. 3

F.R.BANKR.P. 8002 .................................................................................................. 5

F.R.BANKR.P. 8010 ................................................................................................ 20

F.R.BANKR.P. 8013 .................................................................................................. 3

*Means Testing in the New 707(b)*, 79 Am.Bankr.L.J. 231 (Spring 2005) ............... 14, 15, 17

Middle District of Alabama General Order 3047 ..................................................... ii

## STATEMENT REGARDING APPELLATE JURISDICTION

This is an appeal arising from a decision of the United States Bankruptcy Court, Middle District of Alabama.  Jurisdiction of the district court to hear appeals from a decision of a bankruptcy court decision is conferred by 28 U.S.C. §158, granting jurisdiction to the district court over appeals from final judgments, orders, and decrees from the bankruptcy court.  The bankruptcy court's order on confirmation of the debtors' chapter 13 plan is an order within the contemplation of 28 U.S.C §158(a)(1).

## STATEMENT OF ISSUES ON APPEAL

### Issues on Appeal

Whether the debtors' unemployment compensation is a benefit "under the Social Security Act" and should be included in the debtors' disposable income calculations.

Whether the United States Bankruptcy Court for the Middle District of Alabama was correct in its holding that the debtors' plan failed to meet the net projected disposable income test as set out in 11 U.S.C. §1325(b)(1)(B).

### Relief Sought by the Appellee

Curtis C. Reding, Jr., Standing Chapter 13 Trustee for the Middle District of Alabama, the Appellee, seeks an Order from this Honorable Court affirming the bankruptcy court's order denying confirmation of the debtors' plan. It is the trustee's contention that the bankruptcy court was correct in its ruling and that the debtors' plan failed to meet the net projected disposable income test as set out in 11 U.S.C. §1325(b)(1)(B).

2

## STANDARD OF APPELLATE REVIEW

Pursuant to 28 U.S.C. §158, the United States District Court functions as an appellate court in reviewing the bankruptcy court's decisions.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).  The bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."  F.R.BANKR.P. 8013 and 7052.

In contrast to the deference given to factual findings, the United States District Court examines the bankruptcy court's legal conclusions *de novo*.  *In re Club Associates*, 951 F.2d 1223, 1228-29 (11th Cir. 1992).

Confirmation of a debtors' Chapter 13 plan is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(l).  Core matters are reviewed by courts on appeal with findings of fact to be reviewed for clear error and conclusions of law to be reviewed *de novo*.  *In re Armstrong*, 320 B.R. 523(D. Delaware 2005) and *In re Gulfstar Industries, Inc.*, 236 B.R. 75 (M.D. Fla. 1999).

## STATEMENT OF THE CASE

### Nature of the Case

This case is before the court on the notice of appeal filed by the debtors from an Order of the bankruptcy court denying confirmation of the debtors' plan.

### Course of the Proceedings and Disposition in the Court Below

The debtors/Appellants (hereinafter referred to primarily as "the debtors"), Robert L. Washington, III and Gloria Jean Washington, filed for relief pursuant to Chapter 13, Title 11 on January 5, 2009 (BR-1).[1]  With their petition, the debtors filed a chapter 13 plan proposing to pay nothing (0%) to their unsecured creditors (BR-2).  On March 12, 2009, the Chapter 13 trustee/Appellee (hereinafter referred to primarily as "the trustee"), filed an objection to confirmation of the debtors' plan contending that the plan failed to meet the "net disposable income test" as provided by 11 U.S.C. §1325(b)(1)(B) (BR-18).  The trustee's objection alleged that the debtors failed to list all disposable income in their Form B22C - Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income  (hereinafter referred to Form B22C) in that their B22C did not list income from unemployment compensation received by the debtors within the six month period prior to the filing of the case.  The debtors filed an amended plan to resolve the trustee's objection to confirmation, but then filed a response to the trustee's objection and withdrew the amended plan (BR-19, 20, 21).

The debtors' plan, and the trustee's objection thereto, were presented to the bankruptcy court for consideration at the confirmation hearing held on March 23, 2009 (BR-Docket Sheet). The bankruptcy court issued a submission order requiring the parties stipulate to the issues and

---

[1] The record on appeal contains one volume.  For clarity's sake, references to the documents contained in the bankruptcy record will be denoted as (BR-#) and will refer to the docket numbers on the Bankruptcy Court's docket numbering system.

facts in the case and submit briefs on or before May 15, 2009 (BR-25).  The court took the trustee's objection under advisement after the submission of briefs.  A joint stipulation of the issues and facts in the case was submitted to the court by the parties (BR-28)  Each party filed a brief in support of their position pursuant to the court's submission order (BR-29, 30).

On May 21, 2009, the bankruptcy court issued its order sustaining the trustee's objection to confirmation and denied confirmation of the debtors' plan (BR-31).  The debtors filed an amended plan in response to the court's order denying confirmation of the debtors' plan (BR-33).

On June 1, 2009, the debtors filed a notice of appeal with the United States Bankruptcy Court (BR-34).  Pursuant to F.R.BANKR.P. 8002, this appeal was timely filed.   This appeal is currently pending before the United States District Court for the Middle District of Alabama on the debtors' notice of appeal.   This case is still pending with the bankruptcy court as an unconfirmed case awaiting the outcome of this appeal.

## STATEMENT OF THE FACTS

The debtors filed for relief pursuant to Chapter 13, Title 11 on January 5, 2009 (BR-1). As such, the provisions of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* (hereinafter BAPCPA) apply. With their petition, the debtors filed a chapter 13 plan proposing to pay nothing to their unsecured creditors (BR-2).

Pursuant to 11 U.S.C. §§707 and 1325, the debtors filed with their petition form B22C - Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (BR-1). According to Lines 14, 15, 16, 20, 21, 22 of the debtors' B22C Statement, they are "above median income debtors" (BR-1). As these debtors are above median income debtors, they are required by 11 U.S.C. §§1325 and 707 to undergo the "means test." After applying the means test to their income, the debtors are required to commit all projected net disposable income to the chapter 13 plan for the payment of the *unsecured creditors* for an applicable commitment period of 60 months.

The debtors list $953.33 per month in income on schedule I from unemployment compensation (BR-1). The debtor receives this unemployment compensation as a result of his prior employment with Aerotek Temp Services.

On the debtors' Form B22C, line 8, the debtor lists $146.67 on the left hand side of B22C as the six month average of the unemployment compensation income. However, the debtors did not list the $146.67 on the corresponding right hand side of B22C as income for the disposable income calculations (BR-1).

After applying the means test to the income listed by the debtors on their B22C form, the debtors have negative disposable income of -$53.05 on Line 59 of their disposable income calculations (BR-1). If this negative -$53.05 figure is correct, then the debtors' chapter 13 plan

proposing to pay 0% to unsecured creditors is due to be confirmed as it would comply with the

disposable income test.  If the $146.67 in unemployment compensation were included in the

debtors' disposable income calculations, this would result in positive income of $93.62 on line

59 of B22C.  $93.62 in disposable income would result in a POT of $5,617.20 for the benefit of

the debtors' unsecured creditors and the debtors' plan would not be confirmed as it would fail

the "disposable income test" as set out in 11 U.S.C. §1325(b)(1)(B).

These facts are not disputed and were stipulated to by the parties during these

proceedings (BR-28).

## <u>SUMMARY OF THE ARGUMENT</u>

The debtors' unemployment compensation is not a benefit "under the Social Security Act" and therefore should be included in the debtors' disposable income calculations.  As the debtors' plan failed to include the unemployment compensation in their disposable income calculations, the United States Bankruptcy Court for the Middle District of Alabama was correct in its holding that the debtors' plan failed to meet the net projected disposable income test as set out in 11 U.S.C. §1325(b).

## <u>ARGUMENT</u>

With the implementation of BAPCPA, the "projected net disposable income test" as set out in 11 U.S.C. §1325(b)(1)(B) was amended. As a result of this legislation, the issue of how to determine the debtors' disposable income in chapter 13 has become one of the most litigated issues in the bankruptcy courts. Courts that have reviewed disposable income issues since the implementation of BAPCPA are divided. Prior to BAPCPA, the debtors' "net disposable income" was for the payment of the entire plan. With BAPCPA, the debtors' "net disposable income" is now for the payment of the debtors' *general unsecured creditors only*. See 11 U.S.C. §1325(b)(1)(B). Furthermore, if the debtors are determined to be an "above median income" debtor, then they must also meet the "means test" as set out by 11 U.S.C. §707.

11 U.S.C. §1322(a)(1) provides that the debtor must submit "all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Pursuant to 11 U.S.C. §1325(b), the court may not confirm a plan unless the plan provides for the payment of the debtors' "projected disposable income" to general unsecured creditors for the applicable commitment period. Section 1325 provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then *the court may not* approve the plan unless, as of the effective date of the plan— …
>
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied *to make payments to unsecured creditors under the plan*. (Emphasis added).

The amount of the debtors' projected disposable income, which must be paid for the benefit of the debtors' unsecured creditors, is determined by subtracting the reasonably necessary expenses from the debtors' current monthly income.  Section 1325 provides:

> (b)(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; ….

Section 101(10A) defines the term "current monthly income" as

> (A) the average monthly income *from all sources* that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) *without regard to whether such income is taxable income,* derived during the 6-month period ending…and
>
> (B) includes any amount paid by any debtor other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), *but excludes benefits received under the Social Security Act*….(emphasis added).

It is the phrase "*but excludes benefits received under the Social Security Act*" that is the issue in this case.

For those debtors who are "above median income" debtors, meaning, the debtors' current monthly income exceeds the median income of a similarly sized household in Alabama, §1325 provides:

(b)(3) Amounts reasonably necessary to be expended
under paragraph (2) shall be determined in accordance
with subparagraphs (A) and (B) of section 707(b)(2)…

This referenced provision of §707 is more commonly referred to as "the means test."

After the means test is applied, the debtors' net disposable income is paid for the benefit of

unsecured creditors for the applicable commitment period in order to meet the requirements for

confirmation of the plan.  In an above median income case, the applicable commitment period

is not less than 5 years.  See 11 U.S.C. §1325(b)(4)(A)(ii).  In this case, the issue of what

constitutes "current monthly income" affects the final outcome of the means test which in turn

affects the amount to be paid to unsecured creditors over the applicable commitment period.

The term "projected disposable income" is not a new term in chapter 13.  "Disposable

income" under BAPCPA is defined in §1325 as "current monthly income" which is defined at

11 U.S.C. §101(10A) and is a historical figure derived by the debtors' income averaged over

the 6 month period prior to the filing of the case.  However, "projected disposable income" is

not defined.

"Current monthly income" is not necessarily the debtors' "current" monthly income as

it is a figure derived from a historical figure averaged over 6 months prior to the filing of the

case.  As "current monthly income" is not necessarily the debtors' actual monthly income, it is

often difficult for the debtor to reconcile "disposable income" with "projected disposable

income."  There are two fields of thought on this sometimes discrepancy in terms.  One field is

that "projected" simply means to multiply "current monthly income" to determine what is

disposable.  Another field of thought is that the term "projected" is intended to cause a

reexamination of the debtors' potential income over the life of the plan.  While this issue has

not yet been presented to the 11th Circuit for examination, the issue of "projected disposable

11

income" has been examined by many other courts, including the bankruptcy court for the Middle District.

The court in *In re Warren*, 2007 WL 2683837 (Bankr. M.D. Ala. 2007), citing to *In re Arsenault*, 2007 WL 1956277 (Bankr. M.D. Fla. 2007), held that the term "projected" modified "disposable income" to give the phrase "projected disposable income" a "forward-looking flavor, not merely a snapshot using historical data." The *Warren* court held that a court "should consider not only the debtor's historical finances but also the debtor's expectations for the term of the plan."

The 1st Circuit BAP in the case of *In re Kibbe*, 361 B.R. 302 (1st Cir. BAP 2007) held that where the debtors' "current monthly income" is substantially the same as their actual monthly income at the time of filing, then no further examination of the debtors' income is necessary to determine projected disposable income. However, if the debtors' income at confirmation is different from "currently monthly income" or the debtors' income "as reasonably anticipated for the plan commitment period is materially different" from "current monthly income" then the court must depart from the "current monthly income" calculations on B22. *Id.* at 314-315. The court found that the intent of Congress and the requirement of the Code were to reach a "reality-based determination of a debtor's capabilities to repay creditors." *Id.* at 315.

The issue of projected disposable income was also examined by the 6th Circuit BAP in the case of *In re Petro*, 395 B.R. 369 (6th Cir. BAP 2008) where the court held similarly to the court in *Kibbe*. Using the same rationale as the *Kibbe* court, the 6th Circuit BAP held that the court's "inquiry should be focused on the reality of a debtor's income and expenses as of confirmation." *Id.* at 377.

12

Although there is a division amongst the circuits and various bankruptcy courts on the proper way to calculate disposable income, the majority view is that the court should view the projected net disposable income test with a forward looking approach that takes the debtors' actual income and actual expenses into consideration for confirmation.   To exclude the debtors' unemployment compensation from the disposable income calculations would be to ignore the debtors' actual or projected disposable income when deciding if the debtors' plan meets the requirements for confirmation.

In the debtors' briefs, they contend that unemployment compensation is a benefit received under the Social Security Act and should therefore be excluded from their "current monthly income" (CMI) calculations.  The debtors cite to sections of the unemployment compensation statute that refer to the Social Security Act as indicative that all unemployment compensation benefits are "benefits under the Social Security Act."  This is not the case.  Unemployment compensation is funded by monies paid into the fund by employers as contributions for an insurance fund where employees who may become unemployed participate in the fund.  The money contributed to the unemployment compensation fund under the Social Security Act is for the purpose of administering the unemployment fund, not actual contributions to the fund.

Prior to the implementation of BAPCPA, the courts have long held that unemployment compensation is disposable income for the purposes of chapter 13.  See *In re Hickman*, 104 B.R. 374 (Bankr. D. Colo. 1989), *In re Compton*, 88 B.R. 166 (Bankr. S.D. Ohio 1988) and *In re Overtreet*, 23 B.R. 712 (Bankr. W.D. La. 1982).  Very little was excluded from disposable income prior to the implementation of BAPCPA.  In fact, the bankruptcy court for the Middle District has previously held in a pre-BAPCPA case, that even direct social security benefits,

13

while exempted from property of the estate, are still disposable income for the purposes of determining what must be paid to unsecured creditors.  See *In re Salter*, 2007 WL  1076686 (Bankr. M.D. Ala. April 4, 2007).

It was only with a recent amendment to form B22C that the debtor was allowed to "decide" if his or her unemployment compensation is included in the calculation of CMI.  Line 8 of form B22C requires that the debtor list any unemployment compensation received during the 6 month CMI period.  The form then goes on to state "However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below."  Prior versions of Form B22C did not give the debtor the option of deciding whether to include this income in their disposable income calculations.

The relationship between the states, the federal government and the nature of unemployment compensation was explored by the bankruptcy court in the case of *In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008).  In *Baden*, the court cited to an article by Judge Wedoff, *Means Testing in the New §707(b)*, 79 Am. Bankr. L.J. 231 (Spring 2005) where it is explained that unemployment compensation benefits are not benefits "under the Social Security Act." Unemployment compensation programs are programs that are provided to its citizens by the states, not the federal government.  Unemployment compensation funds are state funds in "a state run program that merely receives assistance from the federal government, similar to the federal highway funds which are provided by the federal government, but the benefit is provided by the state in 'administering the program using some federal funds.'"  *Baden*, 396 B.R. at 621.  42 U.S.C. §501 states that the funds provided by the Social Security Act are "for the purpose of assisting the States in the administration of their unemployment compensation

14

laws…" Unemployment compensation benefits are not "social security" benefits as the funds

that are provided for the assistance of the state with its unemployment compensation programs

is only for administrative assistance, not an actual "social security benefits" to be paid as such.

The *Baden* court also looked to the intent of Congress to "protect the Bankruptcy system from

being abused by ensuring that those who could afford to pay their debts did pay." *Baden*, 396

B.R. at 622.

After examining the intent of Congress with BAPCPA, the *Baden* court also looked to

the Internal Revenue Code for guidance in determining the definition of "income" because

> …the distinction between 'income from all sources' and
> 'taxable income' in §101(10A) is similar to the Internal
> Revenue Code distinction between 'gross income' and 'taxable
> income.' Wedoff, *supra*, at 245. The Internal Revenue Code
> explicitly includes unemployment compensation in the
> calculation of 'gross income,' 26 U.S.C. §85, while excluding it
> from the calculation of Medicare, prescription drug subsidies
> which are provided for under the Social Security Act, 26 U.S.C.
> §§138, 139A. Additionally, the Internal Revenue Code does not
> define unemployment compensation as a benefit or payment
> received under the Social Security Act. Compare 26 U.S.C. §85
> with 26 U.S.C. §§86, 138, 139A. The use of the Internal
> Revenue Code for guidance is supported by Congress' reliance
> on the Internal Revenue Code in drafting the provisions for
> determining a debtor's monthly disposable income. See
> §707(b)(2). *Baden*, 396 B.R. at 623.

The *Baden* court's rationale in referring to the Internal Revenue Code (IRC) is further

supported by other court's reference to the IRC for guidance. The court in *In re Warren*, 2007

WL 2916563 (Bankr. D. Mont. 2007) also found the IRC as persuasive when determining the

intent of Congress with its definition of "income" in §101(10A). While the issue in *Warren* was

not that of unemployment compensation, the *Warren* court included unemployment

compensation in its list of "income" to be included when determining disposable income, using

the IRC as a guide.

The court in *In re Seymoure*, 2008 WL 1809309 (D.N.J. 2008), while deciding an issue involving a stay violation also examined the nature of unemployment compensation benefits. The *Seymoure* court, citing to *In re Mewborn*, 367 B.R. 529 (Bankr. D. N.J. 2006) held that

> "…unemployment compensation is a societal contract and not an entitlement." *Mewborn*, 367 B.R. at 539. Unemployment benefits are not a form of social welfare such as social security benefits. Individuals do not personally contribute to any unemployment benefits fund as they do with social security benefits; rather, they give to an unemployment insurance fund, which serves as a form of societal insurance. Additionally, individuals do not have a property right to the unemployment benefits as they do with social security benefits because there is no statutory entitlement. Further, unemployment benefits can be discontinued whereas individuals are never disqualified from receiving social security benefits.

The debtors cite to the court the cases of *In re Munger*, 370 B.R. 21 (Bankr. Mass 2007), *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007) and *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007) as holding that unemployment compensation is "under the Social Security Act" and therefore should be excluded from CMI. The *Baden* court as cited above did not find the courts' rulings in *Sorrell* and *Munger* as persuasive. The *Baden* court held that unemployment compensation is not "under the Social Security Act" and the debtors' unemployment compensation should therefore be included in the debtor's CMI.

When the bankruptcy court in this case examined the issue, the court declined to follow the rulings in *Sorrell* and *Munger* offered by the debtors. In its opinion, the court held:

> As of this writing, there are only three reported decisions addressing this narrow issue of law. Two bankruptcy courts have held that unemployment compensation is a benefit received under the Social Security Act. *See In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007); *In re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007). A third bankruptcy court has held that unemployment compensation is not a "benefit received under the Social Security

Act" as that phrase is used in 11 U.S.C. § 101(10A)(B). *See In re Baden,* 396 B.R. 617 (Bankr. M.D. Pa. 2008).

Just as there is a split among the courts concerning this issue, there is also a split among leading commentators. For example, one treatise states as follows:

> Unemployment benefits are provided for in Titles III, XII, XIII, and XV [of the Social Security Act]. . . . While many of these programs primarily benefit lower income families not affected by the means test, a debtor may receive benefits from such a program that would otherwise be counted in current monthly income, and the exclusion is even more important in a chapter 13 . . . case of an individual debtor because . . . the disposable income test . . . is based on current monthly income for all debtors, both above and below median income.

*Munger*, 370 B.R. at 25 (citing 2 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 101.10A, at 101-81 and 82 (15th ed. rev. 2007)). Thus, *Collier* implies that unemployment compensation benefits are properly excluded from the disposable income calculation.

Judge Wedoff, on the other hand, writes that categorizing unemployment compensation as a "benefit under the Social Security Act" is a "strained interpretation . . . since unemployed individuals receive no benefits 'under the Social Security Act,' but only under programs adopted by their states, which may provide benefits beyond those that are federally funded." *Munger*, 370 B.R. at 24 (citing Eugene R. Wedoff, *Means Testing in the New § 707(B)*, 79 Am. Bankr. L.J. 231, 247 (Spring 2005)).

This court finds the rationale as expressed by Judge Thomas in *Baden* persuasive.

A review of the legislative intent when drafting BAPCPA reveals that Congress had two major goals with the implementation of BAPCPA. One of those two goals was to protect the bankruptcy system from being abused by requiring that those who could afford to pay their debts did pay. To exclude unemployment compensation from the debtors' disposable income calculations would allow them to retain those funds provided by the state to replace their

17

income during the period of their unemployment while failing to pay their bills.  To allow

them to do this "runs contrary to Congress' goal of preventing abuse by those who can afford

to pay a portion of their bills."  *Baden*, 396 B.R. at 622.

## CONCLUSION

For the foregoing reasons, it is the trustee's contention that the bankruptcy court was correct in its finding that the debtors' unemployment compensation income should be used for calculating the debtors' net disposable income. As such, the debtors' plan failed to meet the disposable income requirements for confirmation as set out in 11 U.S.C. §1325(b)(1)(B) in that they were not proposing to pay all their projected disposable income for the benefit of unsecured creditors.

WHEREFORE, the above premises considered, your Appellee, Curtis C. Reding, Jr., Standing Chapter 13 Trustee, moves this Honorable Court to affirm the bankruptcy court's decision that the debtors' plan failed to meet the disposable income test as required by 11 U.S.C. §1325(b)(1)(B).

Respectfully submitted this August 7, 2009.

Curtis C. Reding, Jr.
Standing Chapter 13 Trustee


By: /s/ Sabrina L. McKinney
Sabrina L. McKinney (MCK041)
ASB-3162-I71S
Staff Attorney for Chapter 13 Trustee

Office of the Chapter 13 Trustee
P.O. Box 173
Montgomery, AL  36101-0173
(334) 262-8371 phone
(334) 834-7635 fax
Email: mckinneys@ch13mdal.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Sabrina L. McKinney, counsel for the Standing Chapter 13 Trustee for the Middle District of Alabama, Appellee in this case, do hereby certify that this brief complies with the type-volume limitation set forth in Rule 8010, F.R.BANKR.P.  This brief contains less than 50 pages, exclusive of pages containing the table of contents, tables of citations and any addendum containing statutes, rules, regulations or similar material.

20

## CERTIFICATE OF SERVICE

I, Sabrina L. McKinney, do hereby certify that a copy of the foregoing APPELLEE'S

BRIEF ON APPEAL has been served upon the parties listed below either via electronic service

or via U.S. Mail, postage prepaid and properly addressed, this August 7, 2009:


/s/ Sabrina L. McKinney
Sabrina L. McKinney

Richard D. Shinbaum and
Vonda McLeod (via electronic service)
Counsel for the Appellants

Robert L. Washington, III and
Gloria Jean Washington (via U.S. Mail)
Appellants
2230 W. Aberdeen Drive
Montgomery, AL  36116